United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 2, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-21061
Summary Calendar

ALLSTATE INSURANCE COMPANY,

Plaintiff-Appellee,

v.

YVONNE MADER, ET AL,

Defendants,

YVONNE MADER, Individually; WILLIAM V MADER, Individually;
doing business as Mader's Meat Market & Smokehouse,

Defendants-Appellants,

MICHAEL R WADLER,

Appellant.

Appeals from the United States District Court
for the Southern District of Texas
(04-CV-2173)

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

William Mader and Yvonne Mader appeal the district court's

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

granting of summary judgment. Michael Wadler appeals the district court's final judgment that held him — as the Maders' attorney — jointly and severally liable for Allstate's $17,000 in attorney's fees. The Maders, appearing *pro se*, do not present any issue to this Court that has been preserved for appellate review, and we <u>affirm</u>. Mr. Wadler challenges the award of attorney's fees against him, and we <u>vacate and remand</u> the judgment against Mr. Wadler.

## I. BACKGROUND

This litigation stems from the fiery destruction — under suspicious but ultimately inconclusive circumstances — of Mader's Meat Market and Smokehouse a mere two months after its owners obtained property insurance from Allstate. The insurance policy was predicated on false information. When Yvonne Mader applied for the insurance policy in December, 2003, she told the insurance agent that her husband had been in the meat market business for ten years; in reality, he had traded fish, oysters, and sausage for other goods, but had never actually sold meat or owned a store. Yvonne Mader also told the agent that she and her husband had been in business at that location for forty years; the store was actually a new business that happened to be in the same location as a previous business that had closed its doors months before.

Shortly after the fire reduced the store to rubble, the Maders filed a proof of loss for $566,077. Because of the false

statements on their application, however, Allstate determined that the Mader's insurance policy was void and sought a declaratory judgment. The Maders then hired Mr. Wadler, who filed their counterclaims. They argued that Allstate had breached its contract and engaged in unfair or deceptive practices under the Texas Insurance Code. The Maders subsequently failed to comply with court orders to supply objective evidence of their claims. They also failed to disclose to the court that they had divorced and filed for bankruptcy. The district court struck the Maders' counterclaims and entered judgment for Allstate, awarding attorney's fees of $17,000. The court, *sua sponte*, held Mr. Wadler jointly and severally liable for those fees.

Mr. Wadler moved to amend the summary judgment to reflect that he is not liable for the attorney's fees. In the subsequent hearing, the court declined to amend its previous judgment. Instead of couching Mr. Wadler's liability for attorney's fees as a sanction, however, the court stated to the contrary that "this is not a case of punitive sanctions. I don't think it should be." The court explained that because Mr. Wadler had "an interest in the Maders' claim," presumably a standard contingency arrangement, and because the Maders could not have brought their counterclaim without his assistance, it was appropriate that Mr. Wadler also be held accountable for Allstate's attorney's fees.

3

The Maders now appeal the district court's judgment, *pro se.*
Mr. Wadler also appeals his liability for attorney's fees.

## II. STANDARD OF REVIEW

This is an appeal from a final judgment in the United States District Court for the Southern District of Texas, and this Court has jurisdiction pursuant to Section 1291, Title 28, United States Code. The Maders' claims — concerning what constitutes ethical practices on the part of insurance companies — are not reviewable on appeal. This Court's standard of review as to the court's award of attorney's fees is abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

## III. Discussion

The Maders present two issues on appeal, both of which concern their original application for an insurance policy wherein they supplied false information that ultimately invalidated the policy. Specifically, they argue that the insurance agent's practice of submitting their policy application to multiple companies online without furnishing the Maders a hard copy was unethical, and that an insurance applicant should be "entitled to a copy of the document that he/she had been required to sign." Appellants' Br. (Maders) at 2. Neither issue bears any relation to the proceedings below nor to the district court's striking of the Maders' pleadings, dismissal of their counterclaims, or grant of summary judgment in favor of Allstate.

4

A party must press an argument in the court below in order to preserve it for appeal. *See Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996). Because the Maders fail to present any issue that has been preserved for appellate review, the judgment against them is affirmed.

Mr. Wadler's claims merit more substantial discussion. "It is well settled that the district court has broad discretion in determining the appropriateness of an award of attorney's fees, and we review its award or denial thereof for an abuse of discretion." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1163 (5th Cir. 1994). Other courts have held that sanctions issued *sua sponte*, as these were, are reviewed with "particular stringency." *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002).

The court did not cite any particular code or rule in awarding attorney's fees. The only guidance the court gave came in the hearing on Mr. Wadler's motion to amend the judgment, when the court stated that the award of attorney's fees — and Mr. Wadler's joint and several liability — "is not a case of punitive sanctions." Rather, the court referred to the award as "a cost

5

adjustment." *Id.* Given the court's lack of explanation, we must first determine the basis for the award of attorney's fees and Mr. Wadler's liability. This Court may affirm a district court's imposition of sanctions on any basis supported by the record. *See Johnson Int'l Co. v. Jackson Nat'l Life Ins*. Co., 19 F.3d 431 (8th Cir. 1994).

Allstate requested attorney's fees from the Maders under section 37.001 *et. seq*. of the Texas DJA. However, while "the Texas DJA expressly provides for attorney's fees, it functions solely as a *procedural* mechanism for resolving substantive 'controversies which are already within the jurisdiction of the courts.'" *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)(emphasis added)(quoting *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.-Corpus Christi 1992, writ denied). Texas procedural law does not govern this diversity action. *Id. See also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427(1996)(observing that "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law").

Turning to the relevant federal law, the federal DJA, 28 U.S.C. § 2202, provides that "further necessary or proper relief based on a declaratory judgment . . . may be granted." Attorney's fees are appropriate under § 2202 in "cases of bad faith, vexation, wantonness, or oppression relating to the filing

6

or maintenance of the action." *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988). The Maders' actions were sufficiently vexatious and in bad faith to make the award of attorney's fees proper: the entire litigation stems from their fraudulent insurance application and subsequent deceit, rendering their entire role in the litigation in bad faith. Less certain, however, is the appropriateness of extending liability for those fees to Mr. Wadler.

The court's reasoning — that because Mr. Wadler owns an interest in the case (his potential contingency fee), he is also liable for the attorney's fees even in the absence of any actual punitive sanction — is flawed. Various mechanisms, such as Rules 11, 16(f), 26(g), 37(b), and 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the court's inherent powers, permit the court to hold an attorney liable for fees; all of those mechanisms, however, constitute sanctions. The district court explicitly declared that this is "not a case of punitive sanctions," instead holding Mr. Wadler liable as a party based solely on the interest he acquired in the outcome of the case. There is no precedent allowing such a judgment. Indeed, such a practice in the absence of sanctions would likely have a dramatic impact on plaintiffs' lawyers across the country. Finally, contrary to the district court's opinion, in the case of awarding fees based on bad faith, "the underlying rationale of 'fee shifting' is, of course, punitive." *Chambers v. NASCO, Inc.*, 501

7

U.S. 32, 53 (1991).

To be sure, the court possessed the authority to sanction Mr. Wadler and hold him liable for attorney's fees. In determining the appropriate basis for the sanction, however, the fact that he is jointly liable for all $17,000 of Allstate's attorney's fees — including fees that accrued before Mr. Wadler had been retained as counsel by the Maders — must guide our analysis. The Federal Rules of Civil Procedure limit the attorney's liability to the fees that can actually be attributed to his involvement in the case. By holding Mr. Wadler liable for all the fees, rather than just the fees arising from his filing of a counterclaim and subsequent actions on behalf of the Maders, the court precluded applying Rules 11 (allowing fees "incurred as a direct result of the violation"), 16(f)(requiring attorney "to pay the reasonable expenses incurred because of any noncompliance with this rule . . ."), 26(g)("sanction . . . may include an order to pay the amount of the reasonable expenses incurred because of the violation"), 37(b)(requiring attorney "to pay the expenses . . . caused by the failure . . ."), and 56(g)(allowing fees caused by filing of bad faith affidavit).[1] Similarly, 28 U.S.C. § 1927 potentially affords the court the discretion to impose attorney's

---

[1]Several of these rules also succumb to other procedural requirements that the court failed to satisfy and, therefore, could not have been the basis for the award of attorney's fees, independent of the amount awarded. In the interest of brevity, it is unnecessary to elaborate further given that the full award of all attorney's fees sufficiently precludes application.

fees against Mr. Wadler, but also characterizes the applicable fees as those "reasonably incurred because of [the attorney's] conduct."

Given that none of these standard mechanisms for awarding attorney's fees are applicable, it appears, by process of elimination, that the court awarded attorney's fees under its inherent powers to do so. The Supreme Court has stated that "an assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers*, 501 U.S. at 45. The Court also noted, however, that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

"[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (internal quotations omitted). Moreover, statutes and rules that provide for sanctions do not displace this inherent power. *Id*. at 46. However, while the presence of § 1927 and the various procedural rules as a means of assessing attorney's fees against Mr. Wadler does not prevent the court from resorting to its inherent power, the Supreme Court has also cautioned that where bad-faith conduct could be sanctioned under the Rules, "the court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 50. A court should, therefore, resort to its inherent powers only when "in the informed

discretion of the court, neither the statute nor the Rules are up to the task . . ."

The court, of course, enjoys considerable latitude under the abuse of discretion standard. Nevertheless, it appears from the record that the existing statutes and Rules were adequate to sanction Mr. Wadler. The Maders committed most of the fraud and bad faith in this case before they retained Mr. Wadler as counsel; he was neither a participant when the Maders provided false information to the insurance agent, nor when they filed their inflated claim. Retained *after* Allstate filed for declaratory judgment, Mr. Wadler did file an answer and counterclaims. Whether those counterclaims were in bad faith or otherwise vexatious is safely within the discretion of the court, and if so, various mechanisms are in place to adequately sanction Mr. Wadler. The court did not need to resort to its inherent powers in this case and abused its discretion when it did. "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. at 46). While Mr. Wadler arguably should have done a better job investigating his clients' claims and been less accepting of what they told him, it is a significant leap to find that he defiled the "temple of justice."

For the reasons above, we affirm the district court's grant of summary judgment as to the Maders. We vacate the district court's award of attorney's fees against Mr. Wadler and remand for further proceedings.